# 22-38-CV

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

_____

AGUDATH ISRAEL OF AMERICA, AGUDATH ISRAEL OF KEW GARDEN
HILLS, AGUDATH ISRAEL OF MADISON, RABBI YISROEL REISMAN,
STEVEN SAPHIRSTEIN,
Plaintiffs-Appellants,

AGUDATH ISRAEL OF BAYSWATER, RABBI MENACHEM FEIFER,
Plaintiffs,

v.

KATHY HOCHUL, Governor of the State of New York, in her official capacity,
Defendant-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of New York
No. 1:20-cv-04834-KAM

_____

**BRIEF FOR PLAINTIFFS-APPELLANTS
AND SPECIAL APPENDIX**

_____

Misha Tseytlin
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe Street, Suite 3900
Chicago, IL 60606
Telephone: (608) 999-1240
misha.tseytlin@troutman.com

Avi Schick
W. Alex Smith
TROUTMAN PEPPER
HAMILTON SANDERS LLP
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6126
avi.schick@troutman.com
alex.smith@troutman.com

*Attorneys for Plaintiffs-Appellants*

April 11, 2022

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel for Plaintiffs-Appellants certify that, to the best of our knowledge, Agudath Israel of America, Agudath Israel of Kew Garden Hills, and Agudath Israel of Madison have no parent corporation, and there is no publicly held corporation owning 10% or more of their stock.

# TABLE OF CONTENTS

INTRODUCTION ................................................................1

JURISDICTIONAL STATEMENT ....................................................5

ISSUES PRESENTED FOR REVIEW ................................................5

STATEMENT OF THE CASE........................................................6

    I.  Factual Background ....................................................6

    II.  Procedural Background .................................................9

        A. The District Court's Denial Of Preliminary Injunctive Relief................9

        B. This Court's Denial Of Injunctive Relief Pending Appeal .....................10

        C. The Supreme Court's Order Enjoining Defendant-Appellee's Discriminatory Fixed Capacity Restrictions Pending Appeal ...............12

        D. This Court's Merits Opinion Remanding For The District Court To Grant Preliminary Relief From The Fixed Capacity Limits And To Apply Strict Scrutiny To The Percentage Capacity Limits.....................14

        E. The District Court's Statewide Injunction Enjoining The Fixed And Percentage Capacity Restrictions On All Houses Of Worship ...............17

        F. The District Court's Order On Plaintiffs-Appellants' Motion For Attorney's Fees And Costs Under 42 U.S.C. § 1988(b) ........................18

SUMMARY OF ARGUMENT ..........................................................22

ARGUMENT .....................................................................23

    I.  Standard Of Review....................................................23

    II.  The District Court Abused Its Discretion By Disallowing Fees For Plaintiffs-Appellants' Motion For Injunctive Relief Pending Appeal From This Court ....................................................25

    III. The District Court Abused Its Discretion By Applying Less Than At Least The Highest In-District Rates Used In Complex Litigation ...............30

    IV. This Court Should Direct The District Court To Award Fees On Appeal....................................................42

CONCLUSION ...................................................................43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agudath Israel of Am. v. Cuomo*,
  141 S. Ct. 889 (2020)............................................................................12, 29

*Agudath Israel of Am. v. Cuomo*,
  983 F.3d 620 (2d Cir. 2020) .................................................15, 16, 17

*Agudath Israel of Am. v. Cuomo*,
  980 F.3d 222 (2d Cir. 2020) ......................................................*passim*

*Agudath Israel of Am. v. Hochul*,
  2021 U.S. Dist. LEXIS 233088 (E.D.N.Y. Dec. 6, 2021)..................................19

*Agudath Israel of Am. v. Cuomo*,
  2021 U.S. Dist. LEXIS 41176 (E.D.N.Y. Feb. 9, 2021) ....................................18

*Agudath Israel of Am. v. Hochul*,
  No. 1:20-cv-04834-KAM-RML (E.D.N.Y.) ................................................*passim*

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
  522 F.3d 182 (2d Cir. 2008) ............................................31, 35, 37, 41

*Barfield v. N.Y.C. Health & Hosps. Corp.*,
  537 F.3d 132 (2d Cir. 2008) ......................................................*passim*

*Calvary Chapel Dayton Vall. v. Sisolak*,
  140 S. Ct. 2603 (2020)........................................................................34

*Calvary Chapel Dayton Vall. v. Sisolak*,
  982 F.3d 1228 (9th Cir. 2020) .....................................................34, 35

*Carter v. Inc. Vill. of Ocean Beach*,
  759 F.3d 159 (2d Cir. 2014) ...............................................................24

*Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 2019 U.S. Dist. LEXIS 102840 (E.D.N.Y. June 18, 2019) ..............................................................................32, 37

*Denver Bible Church v. Polis*,
No. 20-1377 (10th Cir.) ...................................................................34

*Farbotko v. Clinton Cnty.*,
433 F.3d 204 (2d Cir. 2005) ......................................................33, 42

*First Pentecostal Church of Holly Springs v. City of Holly Springs*,
959 F.3d 669 (5th Cir. 2020) ...........................................................36

*Fulton v. City of Phila.*,
141 S. Ct. 1868 (2021) ......................................................................14

*Gateway City Church v. Newsom*,
141 S. Ct. 1460 (2021) ......................................................................34

*Grant v. Martinezi*,
973 F.2d 96 (2d Cir. 1992) ...............................................................26

*Harvest Rock Church, Inc. v. Newsom*,
141 S. Ct. 1289 (2021) ......................................................................34

*Harvest Rock Church, Inc. v. Newsom*,
No. 2:20-cv-06414JGB(KKx) (C.D. Cal.) ........................................2

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)...........................................................25, 26, 32, 39

*Hines v. City of Albany*,
862 F.3d 215 (2d Cir. 2017) ......................................................24, 40

*Kassim v. City of Schenectady*,
415 F.3d 246 (2d Cir. 2005) ......................................................32, 41

*Lawton v. Success Acad. of Fort Greene*,
2021 U.S. Dist. LEXIS 1439 (E.D.N.Y. Jan. 3, 2021) .................32, 37

*Lilly v. City of N.Y.*,
934 F.3d 222 (2d Cir. 2019) ......................................................24, 25

*Lunday v. City of Albany*,
42 F.3d 131 (2d Cir. 1994) ...............................................................25

*Millea v. Metro-North R.R. Co.*,
    658 F.3d 154 (2d Cir. 2011) ........................................................23, 25

*Monclova Christian Acad. v. Toledo-Lucas Cnty. Health Dep't*,
    984 F.3d 477 (6th Cir. 2020) ...............................................................34

*N.Y. Ass'n for Retarded Children v. Cuomo*,
    2019 U.S. Dist. LEXIS 124036 (E.D.N.Y. July 22, 2019)...........32, 37

*Perez v. AC Roosevelt Food Corp.*,
    734 F.3d 175 (2d Cir. 2013) ...................................................................5

*Perez v. Westchester Cnty. Dep't of Corrs.*,
    587 F.3d 143 (2d Cir. 2009) .................................................................42

*Quaratino v. Tiffany & Co.*,
    166 F.3d 422 (2d Cir. 1999) .................................................................42

*Raishevich v. Foster*,
    247 F.3d 337 (2d Cir. 2001) .................................................................24

*Reiter v. MTA N.Y. City Transit Auth.*,
    457 F.3d 224 (2d Cir. 2006) ...........................................................33, 42

*Roman Catholic Archbishop v. Bowser*,
    531 F. Supp. 3d 22 (D.D.C. 2021).......................................................34

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
    141 S. Ct. 63 (2020)....................................................................*passim*

*S. Bay United Pentecostal Church v. Newsom*,
    141 S. Ct. 716 (2021)............................................................................34

*S. Bay United Pentecostal Church v. Newsom*,
    140 S. Ct. 1613 (2020)..........................................................................34

*S. Bay United Pentecostal Church v. Newsom*,
    2021 U.S. Dist. LEXIS 107202 (S.D. Cal. June 1, 2021) ...................2

*Seigal v. Merrick*,
    619 F.2d 160 (2d Cir. 1980) .................................................26, 27, 30

*Soos v. Cuomo*,
2021 U.S. App. LEXIS 434 (2d Cir. Jan. 5, 2021) ............................................33

*Sutton v. N.Y. City Transit Auth.*,
462 F.3d 157 (2d Cir. 2006) ................................................................5

*Tancredi v. Metro Life Ins. Co.*,
378 F.3d 220 (2d Cir. 2004) .................................................27, 28, 29

*Tandon v. Newsom*,
141 S. Ct. 1294 (2021) ........................................................................34

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
No. 20-cv-04844-NGG-MMH (E.D.N.Y.) ........................................9

## Statutes

28 U.S.C. § 1331 ...........................................................................................5

28 U.S.C. § 1651 ..........................................................................................12

42 U.S.C. § 1983 .......................................................................................9, 24

42 U.S.C. § 1988 ...................................................................................*passim*

## Rules

Executive Order No. 202.68 ...............................................................*passim*

Fed. R. App. P. 4 ...........................................................................................5

Fed. R. App. P. 8 ..............................................................................10, 21, 29

Fed. R. App. P. 27 ........................................................................................28

Fed. R. Civ. P. 25 ..........................................................................................6

## Other Authorities

Carl Campanile, *Cuomo Calls COVID-19 Resurgence an 'Ultra-
Orthodox' Jewish Problem*, NYPost (Oct. 9, 2020) ..........................7

Daniel Farber, *The Long Shadow of* Jacobson v. Massachusetts*: Public Health, Fundamental Rights, and the Courts*, 57 San Diego L. Rev. 833 (2020) ...............................................................................37

*Governor Cuomo Is a Guest on CNN Newsroom with Poppy Harlow and Jim Sciutto*, New York State (Oct. 9, 2020) ...................................7

Ian Milhiser, *Religious Conservatives Have Won a Revolutionary Victory in the Supreme Court*, Vox (Dec. 2, 2020) ............................35

J. David Goodman, et al., *9 Top N.Y. Health Officials Have Quit as Cuomo Scorns Expertise*, N.Y. Times (Updated Sept. 23, 2021) ......................36

Joseph Goldstein & Sharon Otterman, *Doctor Who Swabbed Cuomo Describes a Health Department in Shambles*, N.Y. Times (Nov. 22, 2021) ..............................................................................36

Josh Blackman, *The "Essential" Free Exercise Clause*, 44 Harv. J.L. & Pub. Pol'y 637 (2021) ........................................................34

Mairead McArdle, *Cuomo Says 'Religious Practices' of Orthodox Jews Causing Virus to Spread in New York City*, National Review (Oct. 14, 2020) .......................................................................8

*NY Gov. Andrew Cuomo Conference Call Transcript October 14*, rev.com (Oct. 14, 2020) .........................................................8

Steve Vladeck (@steve_vladeck), Twitter (Nov. 26, 2020, 8:00 AM) ..................35

Trevor N. McFadden & Vetan Kapoor, *The Precedential Effects of the Supreme Court's Emergency Stays*, 44 Harv. J.L. & Pub. Pol'y 827 (2021) ..............................................................................35

# INTRODUCTION

Plaintiffs-Appellants secured complete relief in this Free Exercise challenge to New York's discriminatory COVID-19 capacity restrictions, obtaining a statewide permanent injunction barring enforcement of disparate capacity restrictions on houses of worship. To obtain this relief, Plaintiffs-Appellants pursued emergency relief from the district court, this Court, and the United States Supreme Court, before returning to this Court and then the district court.

The Supreme Court granted Plaintiffs-Appellants emergency injunctive relief enjoining Defendant-Appellee from imposing restrictions on houses of worship pending appeal, issuing a watershed decision for religious freedom that has resonated across the country and safeguarded millions of religious adherents from discriminatory limits on worship and other religious conduct. This Court also issued a significant decision on Plaintiffs-Appellants' appeal, declaring that strict scrutiny applies to edicts imposing disparate restrictions on religious conduct and that the deprivation of Free Exercise rights plainly constitutes irreparable injury.

Plaintiffs-Appellants sought to recover their reasonable attorney's fees and costs as the prevailing party pursuant to 42 U.S.C. § 1988(b), requesting $921,862.50 in fees plus costs. Plaintiffs-Appellants demonstrated that their hourly rates were eminently reasonable in light of the resounding and unique success obtained in the lawsuit, the novel issues of constitutional law litigated during an

unprecedented health emergency and against the backdrop of unfavorable law, the substantial demands of the emergency posture of the case, and the highly experienced counsel that advocated on behalf of Plaintiffs-Appellants' Free Exercise rights against a governor operating with virtually unchecked authority and who was openly hostile to Plaintiffs-Appellants in enacting the discriminatory restrictions.

Plaintiffs-Appellants also established that the hours incurred were reasonable in this case of national importance that Defendant-Appellee vigorously opposed up to the February 2021 preliminary injunction hearing—even after the Supreme Court's and this Court's rulings. Plaintiffs' fees are especially reasonable in the context of similar religious freedom litigation that obtained less favorable results, in which California agreed to pay $1,600,000 and $1,350,000 for fees and costs.[1]

In awarding fees of $446,521.94, the district court abused its discretion in denying in part Plaintiffs-Appellants' motion for reasonable attorney's fees and costs under 42 U.S.C. § 1988(b), for two separate reasons.

*First*, the district court abused its discretion in denying $43,392.88 in fees for work incurred in pursuing injunctive relief pending appeal from this Court. A court

---

[1] *See S. Bay United Pentecostal Church v. Newsom*, 2021 U.S. Dist. LEXIS 107202 (S.D. Cal. June 1, 2021); Final J. Entering Permanent Inj., Awarding Atty's Fees and Costs, and Dismissing Action, *Harvest Rock Church, Inc. v. Newsom*, No. 2:20-cv-06414JGB(KKx) (C.D. Cal.), ECF No. 95; *see also* Joint Appendix ("JA-") 321 (District of Columbia to pay nearly $400,000 in fees to settle COVID-19 worship restriction litigation tried only in the district court).

may deny fees for pursuing an unfruitful legal theory only if it is frivolous. Yet the district court denied fees even though it expressly declined to rule that Plaintiffs-Appellants' motion was frivolous. The motion plainly was not, and Plaintiffs-Appellants are entitled to fees. This Court granted argument on that motion, a divided panel of this Court held that Plaintiffs-Appellants did not satisfy the high bar for emergency relief while Judge Michael H. Park dissented and would have granted the motion, and the Supreme Court granted Plaintiffs-Appellants' relief.

*Second*, the district court abused its discretion in setting hourly rates lower than at least the highest in-district rates awarded in complex civil rights litigation. The district court inappropriately minimized the most significant factor in determining fees—the degree of success obtained in the case, noting simply that this lawsuit "was not a 'garden variety' civil rights case" and "arguably warranted" a "relatively higher fee"—and instead focused on less significant issues. Special Appendix ("SA-") 16. In light of the complete success of Plaintiffs-Appellants in securing relief on behalf of all houses of worship throughout the State of New York in a landmark religious freedom case litigated on an emergency basis and that since has rippled across the country, Plaintiffs-Appellants' counsel are entitled to rates of at least the highest in-district rates awarded in complex civil rights litigation: $600 for partners, $400 for associates, and $100 for paralegals. Indeed, Plaintiffs-Appellants should have received fees reflecting an upward adjustment to the rates

- 3 -

and hours incurred.  It is difficult to imagine a case more deserving of higher rates and an enhancement than this one that secured emergency injunctive relief from the Supreme Court for a scapegoated minority against the vigorous opposition of a popular governor.

Plaintiffs-Appellants also should recover their reasonable fees in this appeal. As the district court acknowledged, this Court is best suited to determine reasonable fees on appeal.  Upon Plaintiffs-Appellants' forthcoming motion for fees on appeal, in the interests of justice and judicial efficiency, this Court should enter an order directing the district court to issue an order that includes fees for this appeal.

Accordingly, this Court should vacate the district court's order on Plaintiffs-Appellants' motion for attorney's fees and costs pursuant to 42 U.S.C. § 1988(b) and remand for the district court to award fees that reflect the highest in-district rates and an appropriate fees enhancement:  $921,862.50 in fees, which includes $748,732.50 for Troutman Pepper Hamilton Sanders LLP ("Troutman Pepper") and $173,130.00 for the Becket Fund for Religious Liberty (the "Becket Fund").  At a minimum, the district court should award fees with the highest in-district rates of at least $535,192.31, which includes $453,367.31 for Troutman Pepper and $81,825.00 for the Becket Fund, plus the fees incurred for this appeal.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over this lawsuit under 28 U.S.C. § 1331 because Plaintiffs-Appellants pursued claims under the First Amendment to the United States Constitution. The district court granted in part and denied in part Plaintiffs-Appellants' motion for attorney's fees and costs under 42 U.S.C. § 1988(b) on December 6, 2021. SA-1. On January 5, 2022, Plaintiffs-Appellants timely filed a notice of appeal from that order, JA-392, which does not require a "separate document" to trigger the 30-day appeal deadline. *See* Fed. R. App. P. 4(a)(1)(A), (a)(7)(A)(i); *Perez v. AC Roosevelt Food Corp.*, 734 F.3d 175, 176–77 (2d Cir. 2013). This Court has jurisdiction over Plaintiffs-Appellants' appeal pursuant to the collateral order doctrine. *Sutton v. N.Y. City Transit Auth.*, 462 F.3d 157, 160 (2d Cir. 2006).

## ISSUES PRESENTED FOR REVIEW

1. Whether the district court abused its discretion in denying in part Plaintiffs-Appellants' motion for attorney's fees and costs pursuant to 42 U.S.C. § 1988(b) by applying a 10% reduction of fees for work performed in pursuing injunctive relief pending appeal from this Court when that emergency motion was not frivolous.

2. Whether the district court abused its discretion in denying in part Plaintiffs-Appellants' motion for attorney's fees and costs pursuant to 42 U.S.C. § 1988(b) by awarding less than at least the highest in-district hourly rates awarded in complex

civil rights litigation and refusing to provide a fees enhancement in light of Plaintiffs-Appellants' total victory on behalf of all houses of worship throughout New York in this watershed religious freedom case.

3. Whether Plaintiffs-Appellants should be awarded reasonable attorney's fees for work incurred in this appeal.

## STATEMENT OF THE CASE

### I.    Factual Background

On October 6, 2020, Defendant-Appellee[2] issued Executive Order No. 202.68 (the "Order") restricting gathering at houses of worship.  The Order classified effected areas as a "Red Zone," "Orange Zone," or "Yellow Zone," and imposed different restrictions on each zone.  *Agudath Israel of Am. v. Hochul*, No. 1:20-cv-04834-KAM-RML (E.D.N.Y.), ECF No. 2-8.  In the "Red Zone," the Order restricted houses of worship "to a capacity limit of 25% of maximum occupancy or 10 people, whichever is fewer."  *Id.*  In the "Orange Zone," the Order restricted houses of worship "to a maximum capacity limit of the lesser of 33% of maximum occupancy or 25 people, whichever is fewer."  *Id.*  All "[ ]essential" businesses (as

---

[2] At all times relevant to the dispute underlying this litigation, Andrew M. Cuomo was the Governor of the State of New York.  Because Plaintiffs-Appellants filed their lawsuit against Governor Cuomo in his official capacity and Governor Cuomo no longer holds office, the district court on January 20, 2022 ordered that Governor Kathy Hochul in her official capacity be substituted as defendant pursuant to Federal Rule of Civil Procedure 25(d).

well as "essential" gatherings—an undefined term), were free from the harsh capacity restrictions imposed on houses of worship in Red and Orange Zones, and most non-essential businesses were not subject to the restrictive capacity limits imposed on houses of worship in Orange Zones. *Id.*

Defendant-Appellee targeted the Orthodox Jewish community in implementing the discriminatory restrictions and designating areas as Red and Orange zones. The day before issuing the Order, Defendant-Appellee singled out the "ultra-Orthodox community" and "religious institutions" as causing the recent COVID-19 "problem," and he threatened to "close the [religious] institutions down." *Id.*, ECF No. 2-4 at 8–9. Defendant-Appellee continued to openly target Orthodox Jews, proclaiming a few days later that "we have a couple of unique clusters, frankly, which are more religious organizations, and that's what we're targeting," *Governor Cuomo Is a Guest on CNN Newsroom with Poppy Harlow and Jim Sciutto*, New York State (Oct. 9, 2020),[3] and emphasizing that the cluster "is predominantly an ultra-orthodox cluster," Carl Campanile, *Cuomo Calls COVID-19 Resurgence an 'Ultra-Orthodox' Jewish Problem*, NYPost (Oct. 9, 2020).[4] Defendant-Appellee

---

[3]    Available at https://www.governor.ny.gov/news/audio-rush-transcript-governor-cuomo-guest-cnn-newsroom-poppy-harlow-and-jim-sciutto/. All websites last visited on April 10, 2022.

[4]    Available at https://nypost.com/2020/10/09/gov-cuomo-ny-covid-19-spike-an-ultra-orthodox-jewish-problem/.

also announced that "the Orthodox Jewish community in New York, where because of their religious practices, etc., we're seeing a [COVID-19] spread." Mairead McArdle, *Cuomo Says 'Religious Practices' of Orthodox Jews Causing Virus to Spread in New York City*, National Review (Oct. 14, 2020).[5] And Defendant-Appellee stated explicitly that "[t]he micro-cluster we're focusing on is the ultra-Orthodox communities" and that he enacted harsh restrictions on "these ultra-Orthodox communities, who are also very politically powerful." *NY Gov. Andrew Cuomo Conference Call Transcript October 14*, rev.com (Oct. 14, 2020).[6]

Defendant-Appellee declared that the restrictions would apply to specified geographic areas. *Agudath Israel*, No. 1:20-cv-04834-KAM-RML, ECF No. 2-9 at 2; 2-13 at 9–14. Hundreds of synagogues were located in Defendant-Appellee's restricted areas, *id.*, ECF No. 2-17 ¶ 3, and tens of thousands of Orthodox Jews live within those areas, *id.* at ¶ 4. The brunt of the religious burden that the Order imposed thus was on members of the Orthodox Jewish faith. *Id.* at ¶¶ 3–4, 6, EFC No. 2-19 ¶¶ 16–17; 2-20 ¶¶ 15–16; 2-21 ¶¶ 16–17.

---

[5] Available at https://www.nationalreview.com/news/cuomo-says-religious-practices-of-orthodox-jews-causing-virus-to-spread-in-new-york-city/.

[6] Available at https://www.rev.com/blog/transcripts/ny-gov-andrew-cuomo-conference-call-transcript-october-14/.

**II.      Procedural Background**

**A.      The District Court's Denial Of Preliminary Injunctive Relief**

Plaintiffs-Appellants filed a complaint on October 8, 2020 in the United States District Court for the Eastern District of New York challenging the Order as violating their Free Exercise rights and including a claim under 42 U.S.C. § 1983. JA-13.  Plaintiffs-Appellants filed an Emergency Motion for Order to Show Cause for Temporary Restraining Order and Preliminary Injunction that same day.  JA-38. Other religious adherents filed a lawsuit later that day seeking relief from the Order's fixed capacity limits as applied to those particular plaintiffs, *see Roman Catholic Diocese of Brooklyn v. Cuomo*, No. 20-cv-04844-NGG-MMH (E.D.N.Y.), but Plaintiffs-Appellants sought relief from the Order's fixed *and percentage* capacity limits on behalf of *all houses of worship* in the State of New York, JA-32.

District Judge Kiyo A. Matsumoto held a hearing on October 9 and denied Plaintiffs-Appellants' motion. JA-84–109.  The court held that Plaintiffs-Appellants did not have a likelihood of success on their claims, concluding that the Order's restrictions were neutral and generally applicable and survived rational basis review. JA-89–108.  The court also decided that "[t]he balance of the equities and the public interest weigh strongly in favor" of the restrictions and found that the deprivation of Plaintiffs-Appellants' right to in-person worship was "not irreparable," reasoning that "the Orthodox community has previously complied with the total lockdown"

and "can continue to observe their religion but there will have to be modifications." JA-108–09.  After its ruling, the court recognized that the parties "both did excellent papers despite the short time frame."  JA-111.

### B.     This Court's Denial Of Injunctive Relief Pending Appeal

Plaintiffs-Appellants filed an appeal on October 19, 2020 to this Court from the denial of preliminary injunctive relief.  JA-113.

Plaintiffs-Appellants filed an Emergency Motion For Injunction Pending Appeal in this Court on October 21, showing that they were likely to prevail on their claims because Defendant-Appellee unlawfully targeted Orthodox Jews and the Order facially discriminated against religious conduct, the Order inflicted irreparable injury by depriving Plaintiffs-Appellants' Free Exercise rights, and the balance of the equities and public interest favored relief. JA-114.  Plaintiffs-Appellants showed that moving first for an injunction pending appeal in the district court pursuant to Federal Rule of Appellate Procedure 8(a) would have been "impracticable" under the rule's text in light of the court's denial of preliminary injunctive relief. *Agudath Israel of Am. v. Cuomo*, No. 20-3572-CV (2d Cir. 2020), ECF No. 79 at 11–12.  This Court added Plaintiffs-Appellants' motion "as an argued case to the substantive motions calendar," and the Court heard argument on November 3.  JA-146.

A divided panel of this Court denied Plaintiffs-Appellants' motion on November 9.  *Agudath Israel of Am. v. Cuomo*, 980 F.3d 222 (2d Cir. 2020) (per

curiam). While the majority denied the motion on procedural grounds for not moving first in the district court for an injunction pending appeal, the majority also held that it "would deny the motion filed by Agudath Israel" regardless of procedural issues, just as it denied the subsequently-filed motion of The Roman Catholic Diocese of Brooklyn, New York that the Court considered in tandem with Plaintiffs-Appellants' motion. *Agudath Israel*, 980 F.3d at 225. The majority recognized "the impact the [Order] has had on houses of worship throughout the affected zones" but decided that Plaintiffs-Appellants "cannot clear the high bar necessary to obtain an injunction pending appeal." *Id.* at 226.

Judge Park dissented and would have granted Plaintiffs-Appellants' motion, reasoning that the Order "specifically and intentionally burdens the free exercise of religion in violation of the First Amendment." *Id.* at 228–31. Judge Park concluded that the motion should not be denied for procedural reasons, stating that the district court's finding that Plaintiffs-Appellants "had not demonstrated irreparable harm because 'the Orthodox community has previously complied with the total lockdown' and they could 'continue to observe their religion' with 'modifications'" was "error, in light of which plaintiffs reasonably believed that another motion for injunction in the district court would be futile." *Id.* at 231 n.7 (quoting JA-66).

On the merits, Judge Park found that the Order was subject to strict scrutiny because "[t]he Governor's public statements confirm that he intended to target the

free exercise of religion" and the Order's "disparate treatment of religious and secular institutions is plainly not neutral." *Id.* at 229. Reasoning that the fixed capacity limits likely are not narrowly tailored and thus would not survive strict scrutiny, that Plaintiffs-Appellants "presented unrebutted evidence that the [Order] will prevent their congregants from freely exercising their religion," and that "the balance of equities and public interest favor [Plaintiffs-]Appellants," Judge Park declared that he would have granted Plaintiffs-Appellants' motion. *Id.* at 228, 231.

## C. The Supreme Court's Order Enjoining Defendant-Appellee's Discriminatory Fixed Capacity Restrictions Pending Appeal

Plaintiffs-Appellants filed an Emergency Application for Writ of Injunction with Justice Breyer of the Supreme Court on November 16, 2020 and a reply brief on November 22, requesting a writ of injunction pursuant to 28 U.S.C. § 1651(a) enjoining the Order's capacity restrictions on houses of worship pending appeal.

On November 25, the Supreme Court enjoined Defendant-Appellee "from enforcing Executive Order 202.68's 10- and 25-person occupancy limits on applicants, including Agudath Israel of America's current New York-based affiliates," pending appeal. *Agudath Israel of Am. v. Cuomo*, 141 S. Ct. 889 (2020). The Court addressed Plaintiffs-Appellants' application in a per curiam opinion in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020), noting that both applications "present the same issue" and "th[e] opinion addresses both cases."

- 12 -

*Id.* at 65.  The Court concluded that Plaintiffs-Appellants "clearly established their entitlement to relief pending appellate review" by demonstrating "that their First Amendment claims are likely to prevail, that denying them relief would lead to irreparable injury, and that granting relief would not harm the public interest."  *Id.* at 66.  The Court declared that "by effectively barring many from attending religious services," the Order's restrictions "strike at the very heart of the First Amendment's guarantee of religious liberty."  *Id.* at 68.

The Supreme Court held that strict scrutiny applied to the fixed capacity restrictions.  The Court concluded that Plaintiffs-Appellants "made a strong showing that the challenged restrictions violate 'the minimum requirement of neutrality' to religion," *id.* at 66 (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993)), recognizing that "statements made in connection with the challenged rules can be viewed as targeting the 'ultra-Orthodox [Jewish] community'" and stating that "even if we put [Defendant-Appellee's] comments aside, the regulations cannot be viewed as neutral because they single out houses of worship for especially harsh treatment," *id.* (first alteration in original) (quoting *Agudath Israel*, 980 F.3d at 229 (Park, J., dissenting)).[7]

---

[7] Justice Alito subsequently noted that "[o]n the day before he severely restricted religious services in Brooklyn, the Governor 'said that if the ultra-Orthodox [Jewish] community would not agree to enforce the rules, then we'll close the institutions down,'" and observed that "we ultimately enjoined enforcement of the rules" but "two Justices who dissented found the Governor's comments inconsequential."

The Supreme Court held that the fixed capacity limits do not survive strict scrutiny. *Diocese*, 141 S. Ct. at 66–67. The Court reasoned that "it is hard to see how the challenged regulations can be regarded as 'narrowly tailored'" because they are "far more severe than has been shown to be required to prevent the spread of the virus at [Plaintiffs-Appellants'] services." *Id.* at 67 (quoting *Lukumi*, 508 U.S. at 546). The Court found "no evidence that [Plaintiffs-Appellants] have contributed to the spread of COVID-19," emphasizing that Defendant-Appellee "does not dispute" that Plaintiffs-Appellants have "rigorously implemented and adhered to all health protocols and that there has been no outbreak of COVID-19 in [Plaintiffs-Appellants'] congregations." *Id.* (citation omitted).[8]

### D. This Court's Merits Opinion Remanding For The District Court To Grant Preliminary Relief From The Fixed Capacity Limits And To Apply Strict Scrutiny To The Percentage Capacity Limits

This Court issued an opinion on December 28, 2020 reversing in part and vacating in part the district court's order denying preliminary injunctive relief.

---

*Fulton v. City of Phila.*, 141 S. Ct. 1868, 1920 (2021) (Alito, J., concurring in the judgment) (quoting *Agudath Israel*, 980 F.3d at 229 (Park, J., dissenting)).

[8] The Supreme Court also rejected Defendant-Appellee's last-minute attempt to avoid injunctive relief. "After [Plaintiffs-Appellants] asked th[e] Court for relief," Defendant-Appellee lifted certain restrictions and argued that relief thus was unnecessary. *Diocese*, 141 S. Ct. at 68. The Court disagreed, declaring that "injunctive relief is still called for because [Plaintiffs-Appellants] remain under a constant threat that the area in question will be reclassified as red or orange" and "there is no reason why they should bear the risk of suffering further irreparable harm in the event of another reclassification." *Id.* at 68–69.

- 14 -

*Agudath Israel of Am. v. Cuomo*, 983 F.3d 620 (2d Cir. 2020). The Court reversed the district court's order "to the extent that it denied Agudath Israel's motion for a preliminary injunction as to the Order's fixed capacity limits" and remanded "with directions to grant a preliminary injunction against enforcement of those limits." *Id.* at 637. This Court also vacated the order "to the extent that it denied a preliminary injunction against enforcement of the Order's 25% and 33% capacity limits on houses of worship" and remanded "for further proceedings consistent with this opinion, including the application of strict scrutiny in the analysis of Agudath Israel's likelihood of success on the merits." *Id.*

This Court concluded that "both the fixed capacity and percentage capacity limits on houses of worship are subject to strict scrutiny" because they "expressly single[ ] out religion for less favored treatment." *Id.* at 632. The Court rejected Defendant-Appellee's argument that the restrictions are neutral and generally applicable because his favored activities "present lesser risks of COVID-19 transmission than religious worship," reasoning that Defendant-Appellee "has never claimed that the unrestricted category of 'essential' activities was created based on transmission risk." *Id.* "Instead, '[t]he only explanation for treating religious places differently seems to be a judgment that what happens there just isn't as essential as what happens in secular space,'" which triggers strict scrutiny. *Id.* (quoting *Diocese*, 141 S. Ct. at 69 (Gorsuch, J., concurring)).

- 15 -

This Court held that the fixed capacity limits fail strict scrutiny. The Court concluded that the fixed capacity "limits are 'far more severe than has been shown to be required to prevent the spread of the virus at [Plaintiffs-Appellants'] services,' particularly because [Defendant-Appellee] has pointed to no evidence of any outbreaks related to [Plaintiffs-Appellants'] . . . synagogues." *Agudath Israel*, 983 F.3d at 633 (quoting *Diocese*, 141 S. Ct. at 67). The Court recognized that those restrictions "do not account in any way for the sizes of houses of worship" and "bear little relation to the particular COVID-19 transmission risks [Defendant-Appellee] identifies," reasoning that Defendant-Appellee's "identification of those risks relied on broad generalizations made by public-health officials about inherent features of religious worship" and Defendant-Appellee failed to "explain why the Order's density restrictions targeted at houses of worship are more effective than generally applicable restrictions on the duration of gatherings or requirements regarding masks and distancing." *Id.* at 633–34.

This Court remanded whether the percentage capacity limits are narrowly tailored. The Court recognized that "[a]s the Supreme Court held, '[t]here can be no question that the [fixed capacity limits], if enforced, will cause irreparable harm,'" reasoning that "'[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Id.* at 636 (quoting *Diocese*, 141 S. Ct. at 67). The Court also concluded that the public interest "favors granting

injunctive relief," stating that Defendant-Appellee did not show "'attendance at [Plaintiffs-Appellants'] services has resulted in the spread of the disease' or demonstrated that 'public health would be imperiled if less restrictive measures were imposed.'" *Id.* at 637 (quoting *Diocese*, 141 S. Ct. at 68). Reasoning that "[t]he restrictions challenged here specially and disproportionately burden religious exercise, and thus 'strike at the very heart of the First Amendment's guarantee of religious liberty,'" the Court held that "[s]uch a direct and severe constitutional violation weighs heavily in favor of granting injunctive relief." *Id.* (quoting *Diocese*, 141 S. Ct. at 68).

This Court also declared that "[i]n the interest of judicial economy, all further proceedings and subsequent appeals shall be referred to this panel": Chief Judge Debra Ann Livingston, Judge Michael H. Park, and Judge Steven J. Menashi. *Agudath Israel*, 983 F.3d at 637.

### E. The District Court's Statewide Injunction Enjoining The Fixed And Percentage Capacity Restrictions On All Houses Of Worship

On remand, the district court granted a preliminary injunction on January 19, 2021 against the Order's fixed capacity limits on houses of worship and scheduled a preliminary injunction hearing. JA-223.

After a February 8 conference, the district court issued a statewide permanent injunction on February 9 enjoining Defendant-Appellee from enforcing the Order's

fixed and percentage capacity restrictions on houses of worship. JA-249; *see also Agudath Israel of Am. v. Cuomo*, 2021 U.S. Dist. LEXIS 41176 (E.D.N.Y. Feb. 9, 2021). The court barred "enforcement of [the Order]'s 25% capacity or maximum of 10-people, and 33% capacity or maximum of 25-people limitations on houses of worship, respectively in red and orange zones." JA-252. The injunction applied "to [Defendant-Appellee] and all officers, agents, or employees responsible for enforcing Executive Order 202.68, and shall apply to the 10- and 25-person limitations and the 25% and 33% occupancy limits for all houses of worship, respectively in red and orange zones in New York State." *Id.* No other case secured statewide permanent relief or relief from the fixed *and* percentage capacity limits.

### F. The District Court's Order On Plaintiffs-Appellants' Motion For Attorney's Fees And Costs Under 42 U.S.C. § 1988(b)

Plaintiffs-Appellants filed a motion for attorney's fees and costs pursuant to 42 U.S.C. § 1988(b) on June 25, 2021. JA-254. Plaintiffs-Appellants submitted contemporaneously-recorded timesheets, a list of costs incurred, and other evidence in support of fees and costs. JA-256, 260, 308, 384. Plaintiffs-Appellants asked the Court to award $921,862.50 in fees, plus costs, JA-385, predicated on rates that counsel would charge on substantially similar matters of novelty and complexity, JA-259, 261, 319–21. Of those fees, $748,732.50 related to work that Troutman Pepper performed and $173,130.00 to work that the Becket Fund completed. *Id.*

The district court granted in part and denied in part Plaintiffs-Appellants' motion on December 6, 2021 and awarded fees of $446,521.94, which included $368,839.44 for Troutman Pepper and $77,682.50 for the Becket Fund. SA-1, 38; *see also Agudath Israel of Am. v. Hochul*, 2021 U.S. Dist. LEXIS 233088 (E.D.N.Y. Dec. 6, 2021). The court held that Plaintiffs-Appellants were entitled to fees because they "are indisputably the prevailing parties, a point not contested by [Defendant-Appellee]," recognizing that Plaintiffs-Appellants "were granted the relief sought in its entirety, a permanent injunction against the enforcement of [the Order's] capacity limits—both fixed and percentage—on houses of worship in areas deemed red and orange zones in New York State." SA-9–10. The court then calculated "a presumptively reasonable fee, which involves multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." SA-10.

In determining reasonable rates, the district court wrongly discounted the tremendous results secured in this case. The court stated "that this was not a 'garden variety' civil rights case and, therefore, a relatively higher fee award is arguably warranted," and noted in passing the results and demands of the litigation and experience of counsel. SA-16. Yet the court focused on issues it concluded "militate against fee rates greater than those typically awarded to civil rights attorneys in this District of comparable experience and reputation," such as the "reputational enhancement[ ] that counsel may derive from its representation in this action"

- 19 -

because "the exigent nature of these cases allowed counsel to litigate in three different federal courts, including our Nation's highest court, in five months' time." SA-17–18. The court noted counsel's experience and stated that "the highest rates in this District for § 1983 claims are reserved for attorneys who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their fields," SA-19–26 (citation omitted). The court set the following rates:

| Troutman Pepper Counsel | Title | Rate |
|---|---|---|
| Avi Schick | Partner | $550 |
| Misha Tseytlin | Partner | $500 |
| W. Alex Smith | Associate | $375 |
| Mary Grace W. Metcalfe | Associate | $375 |
| Sean T. H. Dutton | Associate | $350 |
| Kevin M. LeRoy | Associate | $350 |
| Christopher J. Kelleher | Associate | $200 |
| Sarah Harris-Finkel | Paralegal | $100 |

| The Becket Fund Counsel | Title | Rate |
|---|---|---|
| Mark Rienzi | President & CEO | $600 |
| Eric Rassbach | VP & Senior Counsel | $600 |
| Luke Goodrich | VP & Senior Counsel | $525 |
| Lori Windham | Senior Counsel | $500 |
| Daniel Blomberg | Senior Counsel | $450 |

SA-21, 26.

The court also refused a fees enhancement allowed for "extraordinary circumstances," reasoning that "the results obtained, difficulty of the case, and the undesirability of the case" were "fully reflected in the loadstar calculation and, therefore, cannot be used as grounds for an enhancement." SA-18 n.5.

- 20 -

In determining reasonable hours, the court refused to award $43,392.88 in fees for work incurred on Plaintiffs-Appellants' motion for an injunction pending appeal in this Court. The court admitted that "[t]his Court, however, in assessing the reasonableness of the hours claimed by Plaintiffs' counsel for appellate proceedings, notes the difficulty in doing so, given the lack of firsthand observation of the services rendered by Plaintiffs' counsel before the Second Circuit." SA-26 n.8. Regardless, the court applied a 10% reduction in Troutman Pepper's fees for work incurred in seeking an injunction pending appeal in this Court. SA-33–34. The court recognized "'[a]s the Second Circuit has noted, the standard for determining whether a party may recover fees for a motion is not whether the motion was unsuccessful, but whether it was frivolous.' *Etna Products Co., Inc. v. Q Marketing Group, Ltd.*, No. 03-cv-3803 (FM), 2005 WL 2254465, at *8 (S.D.N.Y. June 6, 2005) (citing *Seigal v. Merrick*, 619 F.2d 160, 164–65 (2d Cir. 1980))." SA-33. Yet the court concluded: "The Court, though declining to rule on whether [Plaintiffs-Appellants'] flawed motion denied by the Second Circuit on procedural grounds is frivolous, nonetheless applies the 10% reduction sought by [Defendant-Appellee] based on [Plaintiffs-Appellants'] noncompliance with Fed. R. App. P. 8(a)(1)(C)." JA-33–34. The 10% reduction disallowed $43,392.88 in Troutman Pepper's fees. JA-35.[9]

---

[9] The district court also denied without prejudice Plaintiffs-Appellants' unopposed costs. SA-36–38. Plaintiffs-Appellants filed a declaration on December 10 that included additional evidence of $12,625.64 in costs. *Agudath Israel*, No. 1:20-cv-

Plaintiffs-Appellants filed a notice of appeal on January 5, 2022.  JA-392.

## SUMMARY OF ARGUMENT

The district court abused its discretion in denying in part Plaintiffs-Appellants' motion for attorney's fees and costs pursuant to 42 U.S.C. § 1988(b).

*First*, the district court abused its discretion by denying $43,392.88 in fees for pursuing emergency injunctive relief from this Court.  The court's decision is not within the range of permissible decisions reserved to its discretion because the court ignored the standard that allows denying fees for pursuing an unfruitful legal theory only if the theory is frivolous.  Plaintiffs-Appellants' motion was certainly anything but frivolous.  A divided panel of this Court analyzed the merits and determined only that Plaintiffs-Appellants did not satisfy the heightened standard for an injunction pending appeal, and Judge Park would have granted the relief.  The Supreme Court later granted the relief, demonstrating unequivocally the motion was not frivolous.

*Second*, the district court abused its discretion in setting hourly rates that are less than at least the highest in-district rates awarded in complex civil rights litigation.  The degree of success obtained in the litigation is the most important factor in determining fees.  Plaintiffs-Appellants obtained resounding success, securing a statewide injunction against both the fixed and percentage capacity

---

04834-KAM-RML, ECF No. 60.  Defendant-Appellee again did not oppose costs. *Id.*, ECF No. 61.  On March 30, 2022, the court granted $12,625.64 in costs.  JA-12.

restrictions. Plaintiffs-Appellants' victory has resonated across the country. Yet the district court improperly minimized this vital issue in setting rates, inappropriately focusing instead on issues that it decided cut against a high rate when in fact an upward adjustment to fees was appropriate.

If Plaintiffs-Appellants prevail on any part of this appeal, this Court should order the district court on remand to award reasonable fees on appeal. As the district court itself acknowledged, this Court is best positioned to assess the reasonableness of such fees. It should do so in the interests of justice and judicial economy. Plaintiffs-Appellants will file a fees motion when they file their reply brief.

## ARGUMENT

### I.    Standard Of Review

This Court reviews a fees order for abuse of discretion. *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). A court's "discretion is not unfettered, and when a prevailing party is entitled to attorneys' fees, the district court must abide by the procedural requirements for calculating those fees articulated by this court and the Supreme Court." *Id.* "A district court abuses its discretion if it (1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." *Id.* (citation omitted).

Prevailing civil rights litigants should recover reasonable attorney's fees and costs. 42 U.S.C. § 1988(b) provides that "[i]n any action or proceeding to enforce a provision of . . . 42 U.S.C. § 1983 . . . , the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." This Court has recognized that "[u]nder fee-shifting statutes such as [42 U.S.C.] § 1988, 'a prevailing *plaintiff* ordinarily is to be awarded attorney's fees in all but special circumstances.'" *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 163 (2d Cir. 2014) (emphasis in original) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978)). A court should award fees because "'civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which [those] laws contain.'" *Hines v. City of Albany*, 862 F.3d 215, 222 (2d Cir. 2017) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 445 (1983) (Brennan, J., concurring in part and dissenting in part)). A court's "discretion is narrowed by a presumption that successful civil rights litigants should ordinarily recover attorneys' fees." *Raishevich v. Foster*, 247 F.3d 337, 344 (2d Cir. 2001).

The success obtained in the litigation is the most important factor in assessing fees. This Court has instructed that in "determin[ing] the presumptively reasonable fee," courts should ascertain a reasonable hourly rate and multiply that rate "by the number of hours reasonably expended." *Lilly v. City of N.Y.*, 934 F.3d 222, 229–30

(2d Cir. 2019). Courts must be "mindful of the Supreme Court's observation that 'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. Adjustments to the amount are appropriate "in extraordinary circumstances" when the presumptively reasonable fee "'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *Lilly*, 934 F.3d at 230 (quoting *Millea*, 658 F.3d at 167).

## II. The District Court Abused Its Discretion By Disallowing Fees For Plaintiffs-Appellants' Motion For Injunctive Relief Pending Appeal From This Court

The district court abused its discretion in denying in part Plaintiffs-Appellants' fees application by refusing to award fees for work incurred in pursuing injunctive relief pending appeal from this Court, because Plaintiffs-Appellants' motion was not frivolous.

A. In determining whether hours are reasonable, a court must assess whether a reasonable attorney would have engaged in the work. This Court has instructed courts to ensure that the "number of hours were usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). In reviewing the work

performed, a court must bear in mind that "[t]he relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinezi*, 973 F.2d 96, 99 (2d Cir. 1992).

Very favorable results support the reasonableness of hours. The Supreme Court has instructed that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435. A "fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.*

A district court abuses its discretion in disallowing fees to a prevailing party for pursuing an unfruitful legal theory unless the theory was frivolous. In *Seigal v. Merrick*, 619 F.2d 160 (2d Cir. 1980), this Court held that a district court abused its discretion in subtracting from a fees award "10% of the balance for time spent on 'unfruitful legal theories,'" reasoning that "we do not approve the deduction for work on legal theories that proved 'unfruitful' but were not found to have been frivolous." *Id.* at 163–64. The Court reasoned that counsel must be allowed to "evaluate, accept and prosecute suits on the basis of the entire spectrum of theories that show early promise of vindicating their clients' rights." *Id.* at 164–65.

Disallowing fees for pursuing non-frivolous theories would "undercompensate[ ] the inevitable exploratory phases of litigation, and may also invite overly conservative tactics or even prohibit some high-risk but deserving actions entirely." *Id.* at 165.

A district court abuses its discretion in determining that a legal strategy is frivolous unless it is completely without foundation. This Court in *Tancredi v. Metro Life Insurance Company*, 378 F.3d 220 (2d Cir. 2004), held that a district court abused its discretion in finding that a legal theory was frivolous, reasoning that the theory, while incorrect, was not "so bizarre as to be frivolous." *Id.* at 229–30. The Court cautioned that even where "[h]indsight proves" that the theory "was very weak," it is not "frivolous" unless it is "completely without foundation." *Id.* at 230.

B. Plaintiffs-Appellants' motion for injunctive relief pending appeal from this Court was not frivolous. On appeal, Plaintiffs-Appellants sought emergency relief from this Court so that they could engage in worship services free of the discriminatory restrictions. JA-114. Plaintiffs-Appellants showed that they were likely to prevail on the merits of their claims because Defendant-Appellee impermissibly targeted Orthodox Jews for severe treatment and the Order facially discriminated against religious conduct. JA-130–38. They also demonstrated that settled law disproved the district court's finding of no irreparable injury, as "'the loss of First Amendment freedoms'" "'unquestionably constitutes irreparable injury.'" JA-140 (quoting *New Hope Family Servs., Inc. v. Poole*, 966 F.3d 145,

181 (2d Cir. 2020)).  And they established that the balance of the equities and the public interest favored relief, as Plaintiffs-Appellants had safeguarded against COVID-19 prior to the Order and Defendant-Appellee set forth no evidence to the contrary, and protecting Plaintiffs-Appellants' constitutional rights and treating religious and secular conduct similarly would benefit public interest.  JA-141–42.

Plaintiffs-Appellants' motion plainly was not frivolous.  Although motions generally "will be decided without oral argument," Fed. R. App. P. 27(e), this Court granted argument on Plaintiffs-Appellants' motion, JA-146.  The divided panel did not conclude that Plaintiffs-Appellants' motion was "completely without foundation" or "so bizarre as to be frivolous," *Tancredi*, 378 F.3d at 229–30; rather, the majority recognized "the impact the [Order] has had on houses of worship throughout the affected zones" but decided only that Plaintiffs-Appellants "cannot clear the high bar necessary to obtain an injunction pending appeal," *Agudath Israel*, 980 F.3d at 226.  Judge Park would have granted the relief, determining that strict scrutiny applied to the Order because "[t]he Governor's public statements confirm that he intended to target the free exercise of religion" and the Order's "disparate treatment of religious and secular institutions is plainly not neutral," and that the fixed capacity limits likely do not survive strict scrutiny.  *Id.* at 229–30.  Judge Park also concluded that Plaintiffs-Appellants "presented unrebutted evidence that the [Order] will prevent their congregants from freely exercising their religion," and that

"the balance of equities and public interest favor [Plaintiffs-Appellants]." *Id.* at 230–31. And although the divided panel denied the motion on procedural grounds, Plaintiffs-Appellants set forth well-reasoned authority showing that moving first in the district court for an injunction pending appeal would have been "impracticable" under Federal Rule of Appellate Procedure 8(a) in light of the court's denial of essentially that very relief merely a few days ago. *Agudath Israel*, No. 20-3572-CV, ECF No. 79 at 11–12. Judge Park agreed, reasoning that the district court's finding that Plaintiffs-Appellants "had not demonstrated irreparable harm" because "they could 'continue to observe their religion' with 'modifications'" was "error, in light of which [Plaintiffs-Appellants] reasonably believed that another motion for injunction in the district court would be futile." *Agudath Israel*, 980 F.3d at 231 n.7.

Moreover, the Supreme Court granted the relief that Plaintiffs-Appellants sought, demonstrating unequivocally that Plaintiffs-Appellants' motion was eminently reasonable. *Agudath Israel*, 141 S. Ct. 889. The Court concluded that Plaintiffs-Appellants "clearly established their entitlement to relief pending appellate review" by showing "that their First Amendment claims are likely to prevail, that denying them relief would lead to irreparable injury, and that granting relief would not harm the public interest." *Diocese*, 141 S. Ct. at 66. That decision dispels any finding that the Plaintiffs-Appellants' motion was "completely without foundation" or "so bizarre as to be frivolous." *Tancredi*, 378 F.3d at 229–30.

C.   The district court abused its discretion in refusing fees for Plaintiffs-Appellants' motion for injunctive relief pending appeal to this Court because that motion was not frivolous.  The court correctly identified the standard for determining whether to award fees for pursuing unfruitful legal theories:  "'[a]s the Second Circuit has noted, the standard for determining whether a party may recover fees for a motion is not whether the motion was unsuccessful, but whether it was frivolous.' *Etna Products Co., Inc. v. Q Marketing Group, Ltd.*, No. 03-cv-3803 (FM), 2005 WL 2254465, at *8 (S.D.N.Y. June 6, 2005) (citing *Seigal v. Merrick*, 619 F.2d 160, 164–65 (2d Cir. 1980))."  SA-33.  Yet despite not finding that Plaintiffs-Appellants' motion was frivolous, the court granted a 10% reduction.  JA-33–34.  The court abused its discretion in reducing fees for strategies "that proved 'unfruitful' but were not found to have been frivolous."  *Seigal*, 619 F.2d at 163–64.

This Court should vacate the order denying $43,392.88 in fees and remand for entry of an award that includes that amount.

## III.   The District Court Abused Its Discretion By Awarding Less Than At Least The Highest In-District Rates Used In Complex Litigation

The district court abused its discretion in denying in part Plaintiffs-Appellants' fees motion by declining to award at least the highest in-district hourly rates awarded in complex civil rights litigation in light of this landmark Free Exercise case; indeed, a fees enhancement was warranted.

A.  The degree of success in the litigation is the most significant factor in setting a reasonable hourly rate for plaintiff's counsel.

A court should award an hourly rate that a reasonable client would pay for the work provided.  This Court has recognized that a reasonable rate is the amount that "a reasonable, paying client would be willing to pay" for the work conducted, which is the prevailing in-district rate for that work charged by comparable attorneys. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 184, 190–91 (2d Cir. 2008).  "In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* [*v. Ga. Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974),] factors," *id.* at 190, which are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (citing *Johnson*, 488 F.2d at 717–19); *see also id.* at 184.

Success in the litigation is the most significant factor in setting a reasonable rate, and realizing excellent results supports a high rate.  "The Supreme Court has consistently stressed the importance of the degree of the plaintiff's success in the

litigation as a factor affecting the size of the fee to be awarded." *Kassim v. City of Schenectady*, 415 F.3d 246, 253 (2d Cir. 2005). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. This Court has emphasized that the "degree of success obtained" by the plaintiff is the "most critical factor" in fees. *Barfield*, 537 F.3d at 152.

In complex civil rights cases that did not reach the Supreme Court, courts in the Eastern District of New York have concluded that hourly rates of $600 for partners, $400 for associates, and $100 for paralegals are reasonable rates. *N.Y. Ass'n for Retarded Children v. Cuomo*, 2019 U.S. Dist. LEXIS 124036, at *9 (E.D.N.Y. July 22, 2019). A court thus recently awarded the following rates in a complex civil rights case: $550–$600 for attorneys with significant experience and $350–$450 for attorneys with less experience. *Lawton v. Success Acad. of Fort Greene*, 2021 U.S. Dist. LEXIS 1439, at *25–33 (E.D.N.Y. Jan. 3, 2021), *adopted by* 2021 U.S. Dist. LEXIS 45076 (E.D.N.Y. Mar. 10, 2021); *see also N.Y. Ass'n for Retarded Children*, 2019 U.S. Dist. LEXIS 124036, at *9 (rates of between $425–$500 in disability-rights case); *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 2019 U.S. Dist. LEXIS 102840, at *27–35 (E.D.N.Y. June 18, 2019) (in a "hotly litigated constitutional case," awarding $600 and $500 rates).

A district court abuses its discretion where it sets a rate that is not based on the prevailing in-district rate for similar services by lawyers of comparable skill.

This Court has held that a court abuses its discretion where it sets a rate that does not "take[ ] into account the current market rate" in the district for "'similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 233 (2d Cir. 2006) (quoting *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 210 (2d Cir. 2005)). A court also abuses its discretion where it does not adequately "evaluat[e]" the "evidence proffered by the parties" in determining a reasonable rate. *Farbotko*, 433 F.3d at 208–11.

B. Plaintiffs-Appellants are entitled to at least the highest prevailing market rates that Eastern District of New York courts have awarded in complex civil rights litigation: $600 for partners, $400 for associates, and $100 for paralegals.

Plaintiffs-Appellants' resounding success merits at least the highest market rates. As to the "most critical factor" in determining fees, *Barfield*, 537 F.3d at 152, the results obtained, Plaintiffs-Appellants counsel delivered a complete victory, obtaining all requested relief in a watershed case for religious freedom rights. The success is particularly exceptional because unlike other cases, it sought and obtained relief for *all* houses of worship in the State of New York. JA-252; *see also Soos v. Cuomo*, 2021 U.S. App. LEXIS 434, at *2 (2d Cir. Jan. 5, 2021) (requested injunction "moot in light of this Court's decision in *Agudath Israel*"). Plaintiffs-Appellants prevailed despite unfavorable rulings in challenges to COVID-19 restrictions around the country. Indeed, the Supreme Court had rejected challenges

to California and Nevada capacity limitations. *Calvary Chapel Dayton Vall. v. Sisolak*, 140 S. Ct. 2603 (2020); *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020). In "more than one hundred cases," the "bulk" of which "involved houses of worship challenging restrictions on public gatherings," courts "based their decisions on Chief Justice Roberts' sole concurrence in *South Bay*" and "[i]n every case but one . . . ruled against the house of worship." Josh Blackman, *The "Essential" Free Exercise Clause*, 44 Harv. J.L. & Pub. Pol'y 637, 676–77 (2021). "*South Bay*, as reinforced by *Calvary Chapel*, . . . remain[ed] the law of the land" until Plaintiffs-Appellants prevailed in the Supreme Court. *Id.* at 700.

Plaintiffs-Appellants' watershed Supreme Court victory has been cited in hundreds of cases, relied upon by courts across the country (including the Supreme Court) in barring discriminatory COVID-19 restrictions,[10] and led to jurisdictions voluntarily lifting disparate restrictions on houses of worship.[11] The Ninth Circuit

---

[10] *See, e.g.*, *Tandon v. Newsom*, 141 S. Ct. 1294 (2021) (per curiam); *Gateway City Church v. Newsom*, 141 S. Ct. 1460 (2021); *Harvest Rock Church, Inc. v. Newsom*, 141 S. Ct. 1289 (2021); *S. Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716 (2021); *Monclova Christian Acad. v. Toledo-Lucas Cnty. Health Dep't*, 984 F.3d 477 (6th Cir. 2020); *Calvary Chapel Dayton Vall. v. Sisolak*, 982 F.3d 1228 (9th Cir. 2020); *Roman Catholic Archbishop v. Bowser*, 531 F. Supp. 3d 22 (D.D.C. 2021).

[11] *See, e.g.*, State Defs.' Mot. to Dismiss Pending Appeal, *Denver Bible Church v. Polis*, No. 20-1377, at 5–6 (10th Cir. Dec. 8, 2020) (explaining that "per the Supreme Court's decision in *Roman Catholic Diocese*," the challenged "capacity limitations have been removed" and "houses of worship . . . are subject to the same restrictions that apply to all other critical businesses.").

- 34 -

described the decision as "arguably represent[ing] a seismic shift in Free Exercise law." *Calvary Chapel*, 982 F.3d at 1232. Judges and legal scholars have described the case "as a watershed decision" for Free Exercise rights, Trevor N. McFadden & Vetan Kapoor, *The Precedential Effects of the Supreme Court's Emergency Stays*, 44 Harv. J.L. & Pub. Pol'y 827, 834 (2021), and "as the fountainhead of a massive shift in how a majority of the Court approaches religious liberty, specifically—and government regulation, in general," Steve Vladeck (@steve_vladeck), Twitter (Nov. 26, 2020, 8:00 AM);[12] *accord* Ian Milhiser, *Religious Conservatives Have Won a Revolutionary Victory in the Supreme Court*, Vox (Dec. 2, 2020) (the decision is "one of the most significant religion cases in the past 30 years").[13]

The litigation demanded significant effort on an expedited schedule and against forceful opposition of Defendant-Appellee. Counsel engaged in emergency briefing and argument schedules, which "preclu[ded]" attorneys from working on other paying matters. *Arbor Hill*, 522 F.3d at 186 n.3. Counsel represented religious adherents in pursuing an "undesirab[le]" position at the time: challenges to edicts allegedly designed to safeguard public health. *Id.* Counsel did so against a popular figure wielding tremendous and largely unchecked power during the pandemic, and

---

[12] Available at https://twitter.com/steve_vladeck/status/1331945902286774272?Lang=en.

[13] Available at https://www.vox.com/2020/12/2/21726876/supreme-court-religious-liberty-revolutionary-roman-catholic-diocese-cuomo-amy-coney-barrett.

who was overtly hostile towards Plaintiffs-Appellants in enacting the Order.[14]  *See Diocese*, 141 S. Ct. at 66; *Agudath Israel*, 980 F.3d at 229 (Park, J., dissenting); *see also supra* 6–8.   Religious adherents in other jurisdictions who challenged discriminatory edicts were suffering property damage and other threats.  *See First Pentecostal Church of Holly Springs v. City of Holly Springs*, 959 F.3d 669, 670 (5th Cir. 2020) (Willett, J., concurring) (church that challenged COVID-19 restrictions was burned to the ground after filing its lawsuit, and "[g]raffiti spray-painted in the church parking lot sneered, 'Bet you Stay home Now YOU HYPOKRITS.'").  Plaintiffs-Appellants and their counsel pursued litigation despite this harsh adversity.

---

[14] Plaintiffs-Appellants and counsel risked their reputation in challenging Governor Cuomo at the height of his power.  State health officials reported "near constant meddling from the governor's office" in dictating COVID-19 policy.  Joseph Goldstein & Sharon Otterman, *Doctor Who Swabbed Cuomo Describes a Health Department in Shambles*, N.Y. Times (Nov. 22, 2021), https://www.nytimes.com/2021/11/22/nyregion/cuomo-covid-health-department.html.  "[S]tate health officials . . . often found out about major changes in pandemic policy only after Mr. Cuomo announced them at news conferences – and then asked them to match their health guidance to the announcements," J. David Goodman, et al., *9 Top N.Y. Health Officials Have Quit as Cuomo Scorns Expertise*, N.Y. Times (Updated Sept. 23, 2021), https://www.nytimes.com/2021/02/01/nyregion/cuomo-health-department-officials-quit.html, and "the State Health Department was not deeply involved in final decisions [of the Governor's office] that have included allowing public events and mandating business closures based on color-coded 'microclusters,'" Goldstein, *Health Department in Shambles*, N.Y. Times.  State health officials have spoken out "about the crisis inside the public health bureaucracy only on the condition of anonymity, saying that they feared retaliation for speaking out against the governor." Goodman, *Cuomo Scorns Expertise*, N.Y. Times.

The litigation also raised "novel[ ] and difficult[ ]" questions of First Amendment rights in the context of unprecedented public health measures. *Arbor Hill*, 522 F.3d at 186 n.3. Indeed, these issues were so novel that many courts looked back to century-old Supreme Court authority for guidance. *See* Daniel Farber, *The Long Shadow of* Jacobson v. Massachusetts*: Public Health, Fundamental Rights, and the Courts*, 57 San Diego L. Rev. 833 (2020).

Plaintiffs-Appellants required counsel highly experienced in Constitutional and COVID-19-related challenges that could vigorously and swiftly pursue emergency relief from the discriminatory restrictions on houses of worship. Troutman Pepper leveraged its experience in areas involving Free Exercise rights and its appellate litigation practice to assemble a specialized team within hours of Defendant-Appellee's announcement of the restrictions. JA-257–58, 263–66.

In light of the complete victory in this watershed Free Exercise case that counsel secured while working under immense time pressure and addressing novel questions of constitutional law during a national emergency, Plaintiffs-Appellants are entitled to at least the highest in-district rates awarded in complex civil rights litigation: $600 for partners, $400 for associates, and $100 for paralegals. *Lawton*, 2021 U.S. Dist. LEXIS 1439, at *25; *N.Y. Ass'n for Retarded Children*, 2019 U.S. Dist. LEXIS 124036, at *9; *Centro*, 2019 U.S. Dist. LEXIS 102840, at *27–35. Indeed, in houses of worship challenges to COVID-19 restrictions that obtained less

favorable results than those obtained here, California agreed to pay fees of $1.6 million and $1.35 million. Those awards well exceed the fees requested here.

Plaintiffs-Appellants should be entitled to the following minimum fee award.

| Troutman Pepper Counsel | Title | Hours Worked | Rate | Total |
|---|---|---|---|---|
| Avi Schick | Partner | 286.6 | $600 | $171,960.00 |
| Misha Tseytlin | Partner | 77.7 | $600 | $46,620.00 |
| W. Alex Smith | Associate | 521.5 | $400 | $208,600.00 |
| Mary Grace W. Metcalfe | Associate | 15.3 | $400 | $6,120.00 |
| Sean T. H. Dutton | Associate | 101.5 | $400 | $40,600.00 |
| Kevin M. LeRoy | Associate | 14.5 | $400 | $5,800.00 |
| Christopher J. Kelleher | Associate | 9.9 | $400 | $3,960.00 |
| Sarah Harris-Finkel | Paralegal | 42.4 | $100 | $4,240.00 |
| | | | | $487,900.00 |
| Deductions Imposed by the District Court, Not Including the 10% Reduction for Fees Relating to Plaintiffs-Appellants' Injunction Pending Appeal to this Court | | | | – $10,671.25 and – 5% |
| **Total Fee Award** | | | | **$453,367.31**[15] |

| The Becket Fund Counsel | Title | Hours Worked | Rate | Total |
|---|---|---|---|---|
| Mark Rienzi | President & CEO | 34.3 | $600 | $20,580.00 |
| Eric Rassbach | VP & Senior Counsel | 54.1 | $600 | $32,460.00 |
| Luke Goodrich | VP & Senior Counsel | 12.9 | $600 | $7,740.00 |
| Lori Windham | Senior Counsel | 10.0 | $600 | $6,000.00 |
| Daniel Blomberg | Senior Counsel | 14.5 | $600 | $8,700.00 |
| | | | | $75,480.00 |
| Deductions Imposed by the District Court and Requested Fees on Fees Application | | | | + $6,345.00 |
| **Total Fee Award** | | | | **$81,825.00**[16] |

---

[15] $487,900.00 – $6,790.00 – $750.00 – $3,131.25 = $477,228.75. $477,228.75 – 5% = $453,367.31. *See* SA-35.

[16] $75,480.00 – $450.00 = $75,030.00. $75,030.00 + $6,795.00 = $81,825.00. *See* SA-36.

Moreover, the district court should have awarded fees reflecting an upward adjustment because this lawsuit presented "extraordinary circumstances" in which the presumptively reasonable fee determination does not adequately account for the unique nature of the case. *Lilly*, 934 F.3d at 230. Plaintiffs-Appellants secured a watershed Free Exercise ruling that has altered individuals' civil rights weighed against government regulation, and the impact of this lawsuit reaches far beyond the parties and even residents of New York State.

Plaintiffs-Appellants' lawsuit turned the tide of almost unanimous court rulings against religious challenges to COVID-19 restrictions, including two by the Supreme Court, and led courts across the country to safeguard religious adherents from discriminatory COVID-19 restrictions and other jurisdictions that had vigorously defended such restrictions to lift those restrictions voluntarily. Counsel zealously advocated for Plaintiffs-Appellants' civil rights against a popular governor wielding virtually unchecked authority and who was hostile towards Plaintiffs-Appellants in enacting the restrictions and even State health officials who challenged his control. In light of the groundbreaking decision and counsel putting its reputation on the line, a fees enhancement of $921,862.50, which includes $748,732.50 for

- 39 -

Troutman Pepper and $173,130.00 the Becket Fund, is warranted.[17]  Such an award will assist in ensuring that a scapegoated religious minority can secure counsel necessary to "'have a meaningful opportunity to vindicate the important Congressional policies'" of the civil rights laws.  *Hines*, 862 F.3d at 222 (quoting *Hensley*, 461 U.S. at 445 (Brennan, J., concurring in part and dissenting in part)).

C.  The district court abused its discretion in awarding fees calculated using lower than at least the highest in-district rates awarded in complex civil rights litigation in light of the complete victory that Plaintiffs-Appellants obtained on behalf of all houses of worship in the State of New York in a watershed Free Exercise case that since has rippled across the country to protect religious adherents from discriminatory COVID-19 restrictions.

The district court wrongly minimized the most significant fees factor:  the results obtained in the litigation.  The court essentially provided lip service to the "degree of success obtained," *Barfield*, 537 F.3d at 152, stating only that "this was not a 'garden variety' civil rights case and, therefore, a relatively higher fee award is arguably warranted" and that "the results obtained and their national impact . . . weigh in [Plaintiffs-Appellants'] favor."  SA-16.  The court wrongly awarded less than the highest in-district rates awarded in complex civil rights

---

[17] This amount is commensurate with the rates that counsel would charge clients for substantially similar matters of novelty and complexity.  JA-259, 261, 319–21.

litigation by unduly focusing on issues that it considered to "militate against" a higher rate, such as the "reputational enhancement[ ] that counsel may derive from its representation in this action" because "the exigent nature of the cases allowed counsel to litigate in three different federal courts, including our Nation's highest court, in five months' time," SA-17–18,[18] as well as vague assertions that other counsel may have more experience than Plaintiffs-Appellants' counsel, SA-19–25.

The court abused its discretion by inappropriately discounting the overwhelmingly successful results obtained in this lawsuit and disproportionately focusing on issues that it concluded "militate against" a higher rate. Plaintiffs-Appellants obtained a landmark victory that has resonated across the country. Instead of awarding at least the highest in-district rates awarded in complex civil rights litigation that did not secure emergency relief from the Supreme Court in a case of national importance, the court wrongly minimized what this Court has recognized is the "most critical factor" in determining fees, *Barfield*, 537 F.3d at 152, and Supreme Court precedent that "has consistently stressed the importance of the degree of the plaintiff's success in the litigation," *Kassim*, 415 F.3d at 253. The

---

[18] While "an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case," *Arbor Hill*, 522 F.3d at 190, potential reputational benefits here were improbable given the highly unfavorable state of the law to religious challenges to COVID-19 restrictions when Plaintiffs-Appellants retained counsel.

district court thus abused its discretion in failing to set reasonable hourly rates of at least the highest in-district rates for complex civil rights litigation that would properly account for the prevailing market rate and evidence relating to the services provided in this case. *Reiter*, 457 F.3d at 233; *Farbotko*, 433 F.3d at 208–11.

## IV.   This Court Should Direct The District Court To Award Fees On Appeal

This Court also should remand to the district court with direction to award attorney's fees to Plaintiffs-Appellants for work incurred in this appeal.

A prevailing party that successfully pursues an appeal challenging or defending a fees award should recover a reasonable fee for work incurred on appeal. This Court has held that requests for "attorneys' fees for the time spent defending their award on appeal . . . 'should be granted whenever underlying costs are allowed.'" *Perez v. Westchester Cnty. Dep't of Corrs.*, 587 F.3d 143, 156 (2d Cir. 2009) (quoting *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999)). A court likewise should "include in the final award . . . reasonable attorney's fees for services rendered in the successful prosecution of [an] appeal" challenging errors made in awarding fees. *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 428 (2d Cir. 1999).

This Court is best positioned to determine reasonable attorney's fees on appeal. This appeal requires the Court to determine the reasonableness of counsel's rates. *See supra* 30–42. That hourly rate "should also apply to those hours expended on appeal." *Farbotko*, 433 F.3d at 212. As to the reasonableness of the hours

incurred on appeal, the district court itself recognized that it is not in the best position to judge that issue: "This Court, however, in assessing the reasonableness of the hours claimed by Plaintiffs' counsel for appellate proceedings, notes the difficulty in doing so, given the lack of firsthand observation of the services rendered by Plaintiffs' counsel before the Second Circuit." SA-26 n.8.

Upon the filing of their reply brief, Plaintiffs-Appellants will file in this Court a motion for fees that includes evidence of reasonable fees on appeal. In the interests of justice and judicial efficiency, this Court should determine reasonable fees and order the district court on remand to award that amount.

## CONCLUSION

This Court should vacate the district court's order granting in part and denying in part Plaintiffs-Appellants' motion for attorney's fees and costs pursuant to 42 U.S.C. § 1988(b) and remand for the district court to award Plaintiffs-Appellants attorney's fees of $921,862.50, which includes $748,732.50 for Troutman Pepper and $173,130.00 for the Becket Fund, as well as reasonable fees for work incurred in this appeal in an amount established in Plaintiffs-Appellants' forthcoming motion for fees pursuant to 42 U.S.C. § 1988(b). At a minimum, the district court should award fees of at least $535,192.31, which includes $453,367.31 for Troutman Pepper and $81,825.00 for the Becket Fund, plus reasonable fees relating to this appeal.

Dated: April 11, 2022.

                                      Respectfully Submitted,

                                        /s/ Avi Schick

Misha Tseytlin                            Avi Schick
TROUTMAN PEPPER              W. Alex Smith
HAMILTON SANDERS LLP       TROUTMAN PEPPER
227 W. Monroe Street, Suite 3900   HAMILTON SANDERS LLP
Chicago, IL 60606                    875 Third Avenue
Telephone: (608) 999-1240       New York, NY 10022
misha.tseytlin@troutman.com      Telephone: (212) 704-6126
                                        avi.schick@troutman.com
                                        alex.smith@troutman.com

                   *Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify the following:

This brief complies with the type-volume limitation of Local Rule 32.1(A)(4)(A) because it contains 10,260 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32(b), and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this brief has been prepared in a proportionately spaced typeface using the 2016 version of Microsoft Word in 14-point Times New Roman font.

Dated: April 11, 2022

/s/ Avi Schick
AVI SCHICK

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of April, 2022, I filed the foregoing Brief

for Plaintiffs-Appellants with the Clerk of the Court using the CM/ECF System,

which will send notice of such filing to all registered CM/ECF users.

Dated: April 11, 2022

/s/ Avi Schick

AVI SCHICK